Martin, J.
delivered the opinion of the court. The petition states, that Peter Lang *206 lish, now deceased, being in his life-time the owner of the plaintiff, a black man, emancipated him on the 24th of October, 1814, by a notarial act, after having fulfilled all the formalities which the law requires: the act has a suspensive clause, by which a condition is annexed to the emancipation of the plaintiff, who was thereby bound to continue to serve the said Peter, as before, till his, the said Peter's death, when the plaintiff was fully and without further restriction to enjoy his freedom.
East'n District.
Jan. 1821.
The plaintiff alleges, that in order to comply with this condition, he, ever since, gratefully and exactly as before, served the said Peter, and regularly paid him twenty dollars per month, in conformity with an agreement on that subject made between them, and rendered him other services, when requested, till the 23d of April, 1818. In the course of which year, the said Peter instituted a suit against him, and one B. Schons, in the parish court, to have the aforesaid deed of emancipation annulled; in which suit, the said Peter finally failed, 5 Martin, 405. The judgment of the supreme court thereon pronounced, on the 23d of March, 1818, had scarcely become final, when, *207 on the 8th day of the following month, the said Peter executed what is called a deed of revocation of his deed of emancipation, before a notary, and on the 23d, the plaintiff was, through the agency of several ill-disposed persons, who availing themselves of the old age and infirmities of the said Peter, had prevailed on him to execute the deed of revocation, arrested, and deprived of every article of property, even of his clothes, dragged to jail, and inhumanely whipt: whereupon, in order to prevent the recurrence of such abuse, he resorted to the authority of the law, and instituted a suit against the said Peter, which he was afterwards advised to, and did dicontinue.
The petition further charges, that the said Peter, on the 9th of December following, instituted the present defendant his heir, and she now, the said Peter having since died, wrongfully claims and detains the plaintiff as a part of the testator’s estate.
The answer states, that the plaintiff is, and has ever been a slave; and is the property of the defendant;—that the pretended deed of emancipation is null and void; that admiting its legality, it cannot avail the defendant, *208 being a donatio mortis causa, and having been revoked. The general issue is pleaded.
The district court gave judgment for the plaintiff, being of opinion that “ the act of emancipation was executed in due form of law, and the plaintiff acquired by it an absolute and indefeasible right to his freedom, as the person therein mentioned; and between the execution of the act and the death of said Peter, the latter had the same rule and authority over the plaintiff as he had before; but the right of freedom, having once been acquired, could not afterwards be altered or forfeited by any act of the plaintiff or his master—because it is inalienable.” The defendant appealed.
The documents which come up with the record, are the acts of emancipation and revocation; the proceedings in the suit brought by Peter Langlish, to have the first act annulled, and in the suit brought against him by the present plaintiff, referred to in the petition.
The deed of emancipation purports, that Peter Langlish, " by these presents, gives freedom to his negro slave, named Julien, 46 years of age, gratuitously, and to remunerate *209 him for his fidelity and former services, and those he is to render him until his death; which freedom is given, under the express condition, that he shall serve his present master as before till he die; after whose death he is to enjoy it fully, without any opposition or contradiction from any person whatever. Wherefore, au moyeu de quoi, he divests himself and parts with all his right of property and actions on the said slave Julien, in order that he may deal, contract, sell, purchase, make a will, and enjoy all the privileges of a freeman, after the grantor’s death.”
Boisgobert deposed, that Peter Langlish told him, the plaintiff should never serve any other master after his death—that the plaintiff always conducted himself well, and never ran away. It is in the deponent’s knowlege, that the plaintiff continued to serve his master faithfully until he was put in prison. About ten years ago, P. Langlish told this deponent, that the plaintiff worked in town, and paid him eighteen dollars per month. The deponent then lived on the bayou, and now lives on the bayou road. P. Langlish lived at the Metairie, about a league and a half from town. The deponent has since been frequently in *210 neighbourhood, and seen the plantiff coming out of his master’s plantation with vegetables.
A number of other witnesses testified to the same fact.
The gaoler deposed, that the plaintiff was brought to the gaol, on the 23d of April, 1818, and whipt. This was done, and he was detained on the verbal order of the defendant, by one Valcour, who conducted the plaintiff to gaol. The latter remained there, till released by an order of court, on the 23d of May following.
Dutillet saw the plaintiff when he was going to gaol, and asked him what was the matter: he replied, that his master, who was an old rogue, sent him to gaol and wanted to deprive him of his liberty.
Another witness deposed to the same fact.
Beaulieu deposed, that he knew P. Langlish for twenty-two years—that he enjoyed his mental faculties till his death.
The deed of revocation bears date of the 18th of April, 1818. P. Langlish therein declares, in general terms, that he has “just and valid motives to change his dispositions,” and revokes and annuls the act of emancipation.
Seghres for the plaintiff, Mazureau and Morel for the defendant.
We are of opinion, that the plaintiff has not proved that he fulfilled the condition on which he was to be free at his master’s death, and it is in proof that he did not. He refused to serve him as a slave, and was desirous of compelling him to accept, in lieu of his services, a monthly compensation of eighteen dollars. He brought a suit for this purpose, which he afterwards discontinued. The testimony of Dutillet, and the witness who followed him, shew that he insisted on enjoying his freedom before the death of his master, since he charged him with being an old rogue, who was seeking to deprive him of his freedom.
It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided, and reversed, and that there be judgment for the defendant.*

 Porter, J. did not join in this opinion, the case having been argued before he took his seat.